UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
PAULA F. GUITY,

                Plaintiff,

– against –

UNIONDALE UNION FREE SCHOOL DIST.,
*et al.*

                Defendants.
---------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

18-cv-04369 (AMD) (AKT)

**ANN M. DONNELLY**, United States District Judge:

On August 1, 2018, the *pro se* plaintiff, Paula Guity, brought this action against the Uniondale Union Free School District, the District Board of Education, and individual defendants Dr. Myrtle Dickson, Dexter Hodge, Anna Ritter, and Karla Mitchell. (ECF No. 1.) On December 6, 2018, the plaintiff filed an amended complaint alleging discrimination, retaliation, and a hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1981, and New York state law; the plaintiff also claims municipal *Monell* liability, violations of her "Fourteenth Amendment rights," First Amendment retaliation, and intentional infliction of emotional distress. (ECF No. 22.) On January 18, 2019, the defendants moved to dismiss the amended complaint (ECF No. 28), and on March 14, 2019, the plaintiff opposed and moved for leave to file a second amended complaint (ECF Nos. 35, 38). For the reasons discussed below, I grant the defendants' motion to dismiss, and deny the plaintiff's motion for leave to amend the complaint.

1

## BACKGROUND[1]

In September of 2005, the plaintiff began teaching Spanish at the Uniondale High School. (ECF No. 22 ¶¶ 15, 22.) On August 25, 2015, the Board of Education approved the plaintiff's "request for a two year unpaid leave of absence," and informed her that the leave would be "effective August 31, 2015 through June 30, 2017." (ECF No. 38-1 at 4; *see* ECF No. 22 ¶ 16.)[2] On March 22, 2016, Dr. Myrtle Dickson, the Assistant Superintendent for Human Resources, sent the plaintiff a letter informing her that her "unpaid leave of absence became effective on June 3, 2015," and that her "leave ends on June 3, 2017." (ECF No. 38-1 at 5; ECF No. 22 ¶ 18.) On June 2, 2017, Dr. Dickson again advised the plaintiff that her leave would end on June 3, 2017, and explained that the District could not grant her request for an ADA accommodation because it "does not maintain an Alternative School and does not have an off-campus assignment." (ECF No. 38-1 at 6.)

Dr. Dickson scheduled a meeting with the plaintiff, two of her union representatives, and the Director of Second Languages for June 8, 2017, but the plaintiff did not appear for the meeting. (ECF No. 38-1 at 8.) Sometime in late June 2017, the plaintiff requested an accommodation to be transferred from her position at the Uniondale High School to a middle school. (*See* ECF No. 22 ¶ 82.) On August 1, 2017, Dr. Dickson sent the plaintiff a letter clarifying that the plaintiff's leave of absence had actually been through June 30, 2017; Dr.

---

[1] All facts are taken from the amended complaint and the plaintiff's joint opposition and motion to amend. (ECF Nos. 22, 35, 38.) "[A]lthough courts generally will not accept factual allegations raised for the first time in opposition to a motion to dismiss, some courts have construed the mandate to read a *pro se* plaintiff's papers liberally as allowing for consideration of such allegations." *Guity v. Uniondale Union Free Sch. Dist.*, No. 15–CV–5693, 2017 WL 9485647, at *1 n.1 (E.D.N.Y. Feb. 23, 2017), *report and recommendation adopted*, No. 15–CV–5693, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017) (internal quotation marks and citation omitted) (collecting cases).

[2] The page numbers correspond to those generated by the Court's Electronic Court Filing system.

2

Dickson explained that the plaintiff would "return to a teaching position for the 2017-2018 school year," and also scheduled a time to meet with her to discuss a "possible transfer to the Middle School level, and any [ADA] accommodations [the plaintiff] might need given the medical note [she submitted]." (*Id.* at 10.) The plaintiff was transferred to Lawrence Road Middle School and Turtle Hook Middle School to teach Spanish for the 2017-2018 school year. (ECF No. 22 ¶ 22.) According to the plaintiff, on August 28, 2017, Dr. Dickson spoke to the plaintiff's physician, without the plaintiff's permission, about the plaintiff's "disabling condition." (*Id.* at 40.) Then, on September 15, 2017, Dr. Dickson denied the plaintiff's additional ADA accommodation request that the District provide transportation between the schools because her "physician did not say that her 'disabling condition'" would affect her ability to drive. (*Id.* ¶ 82; *see id.* at 40.) The plaintiff claims that Dr. Dickson purposefully sent "harassing notifications" and ignored documentation that the plaintiff's leave ran through June 30, 2017. (*Id.* ¶¶ 18–20; *id.* at 40.)

The plaintiff also complains of her treatment—in particular by Anna Ritter, the Dean of Academic Services at Turtle Hook—during the 2017-2018 school year. She alleges the following transgressions:

- On or around the first day of school, September 4, 2017, Ritter told the plaintiff that she had conducted an internet background search on the plaintiff—unearthing "horrible things"—about which the plaintiff knew nothing. (ECF No. 22 ¶ 25; *see id.* at 41.)

- On September 15, 2017, Ritter called the plaintiff to her office for a meeting (*Id.* ¶ 27), and said that Karla Mitchell, the Guidance Counselor, received complaints from students that the plaintiff had bullied them; Ritter and Mitchell refused to tell the plaintiff which students had complained. (*Id.*) Mitchell later sent Ritter an email stating that "'apparently' the students were telling the truth about Plaintiff's behavior." (*Id.* ¶ 29.)

- On October 5, 2017, Ritter told the plaintiff, "I am Hispanic, and I only want Hispanic teachers to teach the students. These American teachers can't teach because they can't speak Spanish." (*Id.* ¶ 88; *id.* at 41.) That same day, Ritter made another comment about how American teachers could not teach Spanish competently. (*Id.* ¶ 89.)

- On October 6, 2017, Ritter and Mitchell received another student complaint about the plaintiff, and decided that the students' accounts were truthful "before even presenting the student's complaint to [the plaintiff]." (*Id.* at 41.)

- The plaintiff met with Ritter and Mitchell again on October 9 or October 11, this time to speak about the plaintiff's response to a student's insult. (*Id.* ¶ 93.) Ritter spoke to the plaintiff about an exchange with a student in which the student told the plaintiff, "Shut the fuck up, you stupid hoe," to which the plaintiff responded, "It takes one to know one." (*Id.* ¶ 94; *see id.* at 42.) The plaintiff claims that the principal had determined earlier that the student's complaint was "without merit," but that Ritter and Mitchell nevertheless subjected her to "an unauthorized harassing interrogation." (*Id.* at 42.)

- The plaintiff also claims that Ritter singled her out as a "non-native" Spanish speaker at a team meeting on October 12, 2017. (*Id.* at 42.) The plaintiff claims that the meeting was meant to "elicit[] information that served to segregate Hispanic teachers from non-Hispanic teachers." (*Id.*)

According to the plaintiff, Ritter and Mitchell targeted her because she is African-American and not Hispanic.

The plaintiff alleges that she was excluded from Lawrence Road's Hispanic Heritage month from September 15, 2017 to October 15, 2017. (ECF No. 35 ¶¶ 32, 33, 44.) The school selected three Hispanic teachers to present at the event, and the plaintiff was not given the opportunity to present or plan the event. (*Id.* ¶ 33.) One of the selected teachers was "a Black teacher of Hispanic ethnicity." (*Id.* ¶ 34.)

In addition, the plaintiff claims that in September and October of 2017, other teachers came into her classroom while she taught. (ECF No. 22 ¶ 34; ECF No. 35 ¶¶ 38–40.) The plaintiff did not want other teachers there, and believed that they were sent "to spy for administration defendants" because the plaintiff is "a Black American of African-American

4

ethnicity." (*Id.* ¶ 40.) In particular, a Hispanic teacher named Ms. Solarate "would enter and exit" the plaintiff's classroom without the plaintiff's consent. (ECF No. 22 ¶ 34.) Ms. Solarte also corrected the plaintiff's students, which the plaintiff claims was proof of Ms. Solarte's "racially-superior mindset" and was meant to "harass[] and humiliat[e]" the plaintiff. (*Id.* at 35.) On October 16, 2017, the plaintiff "summoned security personnel at the top of her voice and demanded that the teachers be removed from the classroom." (*Id.* ¶ 55.) The security personnel, who were responsible only for students, declined to direct the other teachers to leave the room. (*Id.* ¶ 56.)

The next day, Dexter Hodge, the Lawrence Road Middle School Principal, told the plaintiff that he wanted to meet the plaintiff on October 20, 2017 for a "fact-finding meeting" because he had "heard something."[3] (*Id.* ¶¶ 57, 74.) At the meeting, Hodge told the plaintiff that students were saying that her "lessons lack rigor," and that "teachers stated that [the plaintiff] said, 'I hate coming here. I hate these kids, and I'm going to sue this place, again.'" (*Id.* ¶¶ 49.) The plaintiff responded that "these were not [her] exact words;" she asked Hodge to reveal his sources, but he refused. (*Id.* ¶ 49.) Hodge also told the plaintiff that the "teachers had a right to remain in the classroom" because it was "their room, too." The plaintiff said that "she could not allow it" because of her disability. (*Id.* ¶¶ 74–76.) Hodge said that he treated the school like a "family business," and yelled at the plaintiff while the door was open, "I am the principal. I decide who works in this building. You are disrespectful." (*Id.* ¶¶ 48, 51.) The plaintiff alleges that these comments publicly humiliated her, and caused colleagues to think poorly of her and refuse to help her teach effectively. (*Id.* ¶ 51.)

---

[3] On the day of the meeting, Hodge changed the time of the meeting from the third period to the first period; which the plaintiff claims he did to keep her preferred union representative from attending. (ECF No. 22 ¶¶ 65, 66.)

5

The plaintiff also claims that during the fall of 2017, the administration failed to discipline students who physically and verbally attacked her. (ECF No. 22 ¶¶ 71–73.) She claims that students called her a "stupid bitch" who "can't teach," and commented that "[s]he ain't even Spanish." (ECF No. 22 ¶ 71.) The plaintiff reported these incidents to the administration but the students were not removed from her class. (*Id.* ¶ 72.) According to the plaintiff, the school issued only a verbal reprimand to two male students who stuck the plaintiff in the back with sharpened pencils, but expelled a student who called a white teacher "a stupid hoe." (*Id.* ¶¶ 36, 37.) The plaintiff claims that these experiences caused her to "experience chest pains, sweating, shortness of breath, and body tremors." (ECF No. 22 ¶¶ 54, 69.)

On August 6, 2018, the plaintiff requested a copy of her "employee file . . . for [her] perusal" (ECF No. 38-1 at 15); Dr. Dickson responded that she would address the plaintiff's request when she returned from vacation on August 20. (*Id.* at 16). On August 24, the plaintiff made another request for the file, which she wanted to pick up that day. (*Id.* at 17; ECF No. 35 ¶¶ 14, 15.) Dr. Dickson replied that the copies would not be ready that day, and that she would advise the plaintiff when the copies were ready. (ECF No. 38-1 at 20.) The plaintiff did not get the file until six months after she made her initial request. (ECF No. 35 ¶¶ 18–19.) The plaintiff says that, "White individuals who request copies of their employee file are not made to wait six months." (*Id.* ¶ 19.)

On August 1, 2018, the plaintiff, brought this action alleging claims of discrimination, hostile work environment, and retaliation under Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and New York laws, First Amendment retaliation, Fourteenth Amendment equal protection violation, ADA disability discrimination, "Disability Retaliation and Coercion" pursuant to 42 U.S.C. § 12203 and 42 U.S.C. § 1981, "Deprivation of Right" under 42 U.S.C. § 1983, *Monell*

liability for failure to train, supervise, and discipline under 42 U.S.C. § 1983, intentional infliction of emotion distress, and "Aid[ing] and Abet[ing] Pursuant to New York State Law." (ECF No. 22 ¶¶ 78–129.) The plaintiff seeks damages for her "physical and mental injuries," "mental anguish," "emotional distress," and "special and general pecuniary losses." (ECF No. 22 at 44.) On January 18, 2019, the defendant moved to dismiss, and the plaintiff filed a joint opposition and motion for leave to file a second amended complaint. (*See* ECF Nos. 30 35, 38.)

## DISCUSSION

A court evaluating a motion to dismiss must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, an action will survive only if the law recognizes the claims, and if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). This standard requires more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Allegations in *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court must read a *pro se* complaint liberally and interpret it to raise the strongest arguments it suggests, especially when it alleges civil rights violations. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008); *Weixel v.*

*Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

I. **Federal Law Claims**

   A. **Title VII Claims**

Under Title VII, a plaintiff may assert claims of "direct discrimination (the so-called 'quid pro quo' variety), . . . and 'hostile workplace environment' harassment." *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001) (citing *Carrero v. New York City Housing Auth.*, 890 F.2d 569, 577 (2d Cir. 1989)); *Thompson v. Landers*, No. 17–CV–5857, 2018 WL 5045762, at *2 (E.D.N.Y. Oct. 17, 2018). Title VII also covers retaliation claims, and makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." § 2000e–3(a) (emphasis added); *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006).

   *1. Discrimination Claim*

To establish a *prima facie* case of discrimination under Title VII, the plaintiff must allege facts to show that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position she held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010) (citation omitted).

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Richardson v. New York State Dep't of*

*Correctional Serv.,* 180 F.3d 426, 446 (2d Cir.1999)). Courts have found that "termination, and demotion evidenced by a decrease in salary or wage, a less distinguished title, a material loss in benefits, significantly diminished material responsibilities" are materially adverse actions. *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004). On the other hand, "inconvenience or an alteration of job responsibilities" alone is not materially adverse. *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 204 (2d Cir. 2006); *see Galabya,* 202 F.3d at 640.

The plaintiff does not allege a plausible claim of discrimination because she does not allege that she suffered a "materially adverse" employment action. The plaintiff was not fired, disciplined, or demoted. The actions she cites—that her interactions with school leadership made colleagues think poorly of her, and that she was not allowed to participate in Hispanic Heritage month celebrations—do not amount to "materially adverse" employment actions. Therefore, the claim is dismissed.

### 2. *Hostile Work Environment Claim*

"[I]t is 'axiomatic' that in order to establish a . . . hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her" protected status. *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir. 2001)). "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . race [or] . . . sex.'" *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998).

"A plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of NY,*

795 F.3d 297, 320–21 (2d Cir. 2015) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To determine whether a work environment is hostile, the court considers the totality of the circumstances, including "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance." *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 319 (2d Cir. 1999) (citing *Harris*, 510 U.S. at 23); *see Thompson*, 2018 WL 5045762, at *3.

The plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (quoting *Perry*, 115 F.3d at 149). "Isolated incidents or episodic conduct will not support a hostile work environment claim." *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999); *see Kotcher v. Rosa and Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir. 1992) ("The incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief."). "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity.'" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (quoting *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir. 1986)).

The plaintiff cites only one incident during which the defendants raised the subject of ethnicity—a discussion about whether Spanish teachers were Hispanic or not—and makes no claim that the defendants discussed the plaintiff's race. (ECF No. 22 ¶ 88.) Moreover, even accepting the plaintiff's characterizations of the defendants' comments as racially

discriminatory, she cites only sporadic remarks over the course of two months. This is insufficient to sustain a hostile work environment claim; the claim is dismissed.

### 3. Retaliation Claim

Under Title VII it is unlawful "for an employer to discriminate against any . . . employee[] . . . because [that employee] opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). "To establish a prima facie case of retaliation, the plaintiff must demonstrate that (1) the employee engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the materially adverse action. *Lynch v. New York State Urban Dev. Corp.*, No. 16–CV–5926, 2018 WL 7918226, at *7 (E.D.N.Y. Aug. 10, 2018); *see Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012). "A plaintiff must show that a reasonable employee would have found the challenged action materially adverse . . . [meaning that] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68. "Whether a particular [action] is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). If the plaintiff does not allege any disciplinary action, "courts are more likely to find that the employee was not subjected to a materially adverse action." *Lynch*, 2018 WL 7918226, at *8; *see Tepperwein v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 569 (2d Cir. 2011).

The plaintiff does not claim that she engaged in any protected activity or that she was subject to a materially adverse action. As discussed above, the plaintiff was not fired or disciplined. The only "adversity" she claims is that she could not participate in a Hispanic Heritage event, that she had to meet with school administrators—defendants Hodge, Ritter, and Mitchell—and that she had to share a classroom with other teachers. None of these incidents would "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68. Therefore, the plaintiff's Title VII retaliation claim is dismissed.

B. **Americans With Disabilities Act Claim**

The ADA prohibits an employer from discriminating against a qualified employee on the basis of disability. 42 U.S.C. § 12112(a). To establish a *prima facie* case of discrimination under the ADA, the plaintiff must demonstrate that "(1) the defendant is subject to the ADA, (2) the plaintiff was disabled within the meaning of the ADA, (3) the plaintiff was otherwise qualified to perform the essential functions of her job, with or without a reasonable accommodation, and (4) the plaintiff suffered an adverse employment action on the basis of her disability." *Nash v. HomeGoods, Inc.*, No. 16-CV-1043, 2019 WL 1433049, at *8 (E.D.N.Y. Mar. 29, 2019); *see Sista v. CDC Ixis N Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)). The plaintiff must also "show that the adverse employment action 'took place under circumstances giving rise to an inference of discrimination.'" *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

The plaintiff has not alleged sufficient facts to sustain an ADA discrimination claim. The plaintiff claims that Dr. Dickson's mistake about the plaintiff's last day of medical leave was an

act of ADA discrimination, and that Dr. Dickson's emails and letters were purposefully harassing. As the plaintiff admits, Dr. Dickson realized her mistake on August 1, 2017, and sent the plaintiff a letter to that effect, and confirmed that the plaintiff had a teaching position for the 2017-2018 school year. (ECF No. 22 at 10.) The plaintiff has not alleged facts that suggest even an "inference of discrimination," *Davis,* 804 F.3d at 235 (quoting *Graham* 230 F.3d at 39), nor, as discussed above, has she suffered an adverse employment action.

A liberal reading of the complaint suggests a failure to accommodate claim under the ADA. "To plead a failure-to-accommodate claim, a plaintiff must allege that '(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Dooley v. JetBlue Airways Corp.,* 636 F. App'x 16, 18 (2d Cir. 2015) (summary order) (quoting *McMillan v. City of N.Y.,* 711 F.3d 120, 125–26 (2d Cir. 2013)). Moreover, "[a] defendant is not required to offer an accommodation that imposes an undue hardship on its program's operation; it is only required to make a reasonable accommodation." *Powell v. Nat'l Bd. of Med. Examiners,* 364 F.3d 79, 88 (2d Cir. 2004) (citing 28 C.F.R. § 41.53 (2002)).

To the extent that the plaintiff claims that the defendants failed to accommodate her requests for an off-campus assignment (ECF No. 38-1 at 6) and for transportation between the schools (ECF No. 22 ¶ 82), the allegations are insufficient to sustain an ADA claim. While the District did not grant those accommodation requests, it did grant the plaintiff's request to "transfer to the Middle School level." (ECF No. 38-1 at 10.) An "employer is not obligated to provide an employee the accommodation [she] requests or prefers," and "need only provide

some reasonable accommodation." *Felix v. New York City Transit Auth.*, 154 F. Supp. 2d 640, 655 (S.D.N.Y. 2001), *aff'd*, 324 F.3d 102 (2d Cir. 2003) (quotation marks and citation omitted). Accordingly, the accommodation claim is dismissed.

### C. *Monell* Liability

The plaintiff also sues the District for failing to train defendant Hodge, among others, to act without violating her constitutional equal protection rights. (ECF No. 22 ¶ 123.) For a municipality to be liable under § 1983 and § 1981, the plaintiff must prove "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citation omitted). A custom or policy is established "in one of four ways: by alleging the existence of: (1) a formal policy; (2) action taken or decisions made by policymakers that caused the violation [alleged]; (3) a practice so persistent and widespread that it constitutes a 'custom or usage;' or (4) a failure to properly train or supervise municipal employees." *Byvalets v. New York City Hous. Auth.*, No. 16–CV–6785, 2017 WL 7793638, at *14 (E.D.N.Y. July 28, 2017), *report and recommendation adopted*, No. 16–CV–6785, 2018 WL 1067732 (E.D.N.Y. Feb. 23, 2018) (citing *White v. City of N.Y.*, 206 F. Supp. 3d 920, 937 (S.D.N.Y. 2016) (citation omitted)).

The plaintiff does not allege that the District had a formal policy that denied the plaintiff a constitutional right. Rather, she relies on the other three remaining ways of establishing *Monell* liability.

If a plaintiff "seek[s] to hold a municipality liable for a single decision by a municipal policymaker, [plaintiffs] must show that the official had final policymaking power." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (citation and internal quotation marks omitted). "[T]he critical inquiry is not whether an official generally has final policymaking authority;

14

rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." *Id.* The plaintiff has not alleged facts that demonstrate that any of the defendants in the complaint were final policymakers. Although the plaintiff makes the conclusory allegation that Hodge was the policymaker for the building (ECF No. 22 ¶ 45), she alleges no facts that demonstrate that Hodge or any of the other defendants were final policymakers for any official municipal policy or custom.

To plead the third *Monell* kind of liability—custom or usage—the plaintiff must allege "a longstanding practice or custom which constitutes standard operating procedure." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (internal quotation marks, alterations, and citations omitted). The policy must be "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Byvalets*, 2017 WL 7793638, at **15–16 (quoting *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992)). "In determining if a practice is widespread, courts have found a wide range of instances insufficient to plausibly allege a municipal custom." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 95 (E.D.N.Y. 2016).[4] "[I]solated acts . . . by non-policy-making municipal employees are generally not sufficient[.]" *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). The incidents plaintiff cites are not sufficiently widespread, persistent or discriminatory to constitute an official policy.

---

[4] *See, e.g., Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (summary order) (the plaintiff "identifie[d], at most, only four examples" of defendants' allegedly wrongful behavior which "[fell] far short of establishing a practice that is so persistent or widespread as to justify the imposition of municipal liability.") (citations and internal quotation marks omitted)); *Cruz v. City of New York*, No. 15–CV–2265, 2016 WL 234853, at *5 (S.D.N.Y. Jan. 19, 2016) ("[E]ight cases cited from a municipality (New York) far bigger than Newburgh, makes the number of cited cases particularly inadequate to demonstrate plausibly a municipal custom."); *Tieman v. City of Newburgh*, No. 13–CV–4178, 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (thirteen instances of similar excessive force allegations over a four year period were insufficient to state a custom where, during that time period "hundreds, if not thousands, of arrests were made").

On the contrary, the plaintiff alleges isolated and unrelated incidents that involve only non-policy-making municipal employees. *Id.* Therefore, the plaintiff does not allege sufficient facts to demonstrate an official policy or custom under a theory of persistent or widespread conduct.

Finally, to demonstrate that a municipal failure to train constitutes deliberate indifference, a plaintiff must allege: (1) "a policymaker knows to a moral certainty that [his or] her employees will confront a given situation;" (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;" and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *W.A. v. Hendrick Hudson Cent. Sch. Dist. & Kathleen Coughlin*, No. 14-CV-8093, 2016 WL 1274587, at *10 (S.D.N.Y. Mar. 31, 2016) (quoting *Jenkins v. City of N.Y.*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotation marks omitted)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks omitted).

The complaint does not include facts sufficient to allege that a policymaker "knows to a moral certainty that [his or] her employees will confront a given situation." *Hendrick Hudson Cent. Sch. Dist.*, 2016 WL 1274587, at *10. The plaintiff does not allege the identity of a policymaker in relation to the alleged incidents, or that any policymaker had "moral certainty" that an employee's conduct would deprive the plaintiff of her constitutional rights. Therefore, these claims are dismissed.

### D.    § 1983 "Deprivation of Right Under Color of Law" Claim

The plaintiff cannot bring a separate "deprivation of right" claim under § 1983 as the statute "is not itself a source of substantive rights, but a method for vindicating federal rights

16

elsewhere conferred by those parts of the United States Constitution and federal statutes." *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 335 (E.D.N.Y. 2006) (citing *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979)). In connection with this claim, the plaintiff has not alleged any underlying Constitutional or statutory violation; therefore, her "deprivation of right" claim is dismissed.

### E. Fourteenth Amendment Equal Protection Claim

The plaintiff also has not adequately pled an equal protection claim. The Equal Protection Clause requires that the government treat all similarly situated people alike. *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). An equal protection claim requires a plaintiff to "sufficiently allege that defendants acted with discriminatory intent." *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982)). As discussed above, the plaintiff has not pled enough facts to raise an inference of discriminatory intent, so the claim is dismissed.

### F. First Amendment Retaliation Claim

The plaintiff's First Amendment retaliation claim must be dismissed as well. Plaintiffs who claim that they were "retaliated against in violation of the First Amendment, must plausibly allege that '(1) [their] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [them]; and (3) there was a causal connection between this adverse action and the protected speech.'" *Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 394 (2d Cir. 2018) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)). To show "causal connection," the plaintiff must plead facts that "'warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action,

that is to say, the adverse employment action would not have been taken absent the employee's protected speech.'" *Stajic v. City of N.Y.*, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016) (quoting Morris, 196 F.3d at 110). "In the context of a First Amendment retaliation claim, . . . 'only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'" *Zelnik v. Fashion Institute of Technology*, 464 F.3d 217, 225 (2d Cir. 2006) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004)) (brackets omitted). Here, even assuming that the plaintiff engaged in protected speech, as discussed above, there was no adverse action. The plaintiff's First Amendment claim is dismissed.

## II. State Law Claims

Having dismissed the plaintiff's federal claims, the Court declines to exercise jurisdiction over the plaintiff's state law claims. "Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims." *Wolfinger v. Consolidated Edison Co. of New York, Inc.*, No. 17-CV-1710, 2018 WL 3637964, at *12 (E.D.N.Y. July 31, 2018) (citing 42 U.S.C. § 1367(c)(3)). "In deciding whether to exercise supplemental jurisdiction, district courts should balance the values of judicial economy, convenience, fairness, and comity." *Thompson*, 2018 WL 5045762, at *4; *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) ("[F]ederal policy concerns may argue in favor of exercising supplemental jurisdiction even after all original-jurisdiction claims have been dismissed."). Having dismissed all federal claims in this action, I decline to exercise

supplemental jurisdiction over the plaintiff's remaining state law claims. *Klein & Co. Futures. Inc. v. Bd, of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) ("[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

### III. Motion for Leave to Amend

As part of her opposition, the plaintiff attaches a proposed second amended complaint, which I interpret as a motion for leave to amend. (ECF No. 35 at 5–18.) Generally, leave to file an amended complaint is freely granted when justice so requires, and "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). A district court may "deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposition party." *Id.* An amendment is "futile when it does not contain enough allegations to state a claim for relief that is plausible on its face." *See Annunziatto v. Collecto, Inc.*, 293 F.R.D. 329, 33 (E.D.N.Y. 2013) (citing *Twombly*, 550 U.S. at 570). "The standard governing leave to amend, flexible to begin with, is further liberalized for *pro se* plaintiffs." *Marcelin v. Cortes-Vazquez*, No. 09–CV–4303, 2011 WL 346682, at *2 (E.D.N.Y. Jan. 28, 2011) (citing Fed. R. Civ. P. 15(a)(2) and *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotation marks and citation omitted)). The court, however, maintains discretion to deny leave to amend "in instances of futility." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citation omitted). I have reviewed the proposed second amended complaint, and have considered it in deciding the defendants' motion to dismiss. The second proposed amended complaint does not include any additional factual allegations or claims that would survive a motion to dismiss; therefore, I find that an amendment would be futile, and deny the plaintiff's motion for leave to amend.

## CONCLUSION

Accordingly, I grant the defendants' motion to dismiss with respect to the plaintiff's federal claims, and decline to exercise jurisdiction over the remaining state law claims, and deny the plaintiff's motion for leave to amend the complaint. The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

                                                                              s/Ann M. Donnelly
                                                                              Ann M. Donnelly
                                                                              United States District Judge

Dated: Brooklyn, New York
        July 25, 2019